UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Patrick Moloney,

      Plaintiff,

v.                                                    Honorable Sean F. Cox

Home Depot U.S.A., Inc.,                              Case No. 11-10924

      Defendant.

_____/

## OPINION & ORDER

      In this action, Plaintiff Patrick Moloney ("Plaintiff") asserts that his former employer,

Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot"), discriminated against him

in violation of the Americans with Disabilities Act ("ADA") and Michigan's Persons with

Disabilities Civil Rights Act ("PWDCRA") when it terminated his employment. Plaintiff also

asserts that Home Depot violated both the ADA and the PWDCRA by failing to accommodate

his disability. The matter is currently before the Court on Defendant's Motion for Summary

Judgment. The parties have briefed the issues and the Court heard oral argument on May 17,

2012.

      For the reasons that follow, the Court shall grant the motion in part, deny the motion in

part, and defer ruling on Plaintiff's failure to accommodate claim under the ADA until after the

parties have submitted supplemental briefs. More specifically, the Court shall: 1) DENY

Defendant's motion as to Plaintiff's claims under the ADA and PWDCRA that he was

terminated because of his disability; 2) GRANT Defendant's motion as to Plaintiff's failure-to-

accommodate claim under Michigan's PWDCRA; 3) shall hold a Status Conference with

1

Counsel on **July 13, 2012 at 2:30 p.m.**, to determine whether the parties can address the remaining issues involving Plaintiff's failure to accommodate claim under the ADA by virtue of supplemental briefs or whether some very limited additional discovery is needed by either party before doing so.

## BACKGROUND

Plaintiff filed this action against his former employer, Home Depot, on March 8, 2011, and filed an Amended Complaint on April 14, 2011.  Plaintiff's Amended Complaint asserts the following claims: "Violation of the Americans with Disabilities Act Discrimination" (Count I); and "Violation of Michigan's Persons with Disabilities Civil Rights Act Disability Discrimination" (Count II).  Plaintiff's Amended Complaint alleges that Home Depot discriminated against Plaintiff on the basis of his alleged disability in that: 1) Home Depot terminated his employment because of his disability; and 2) Home Depot failed to furnish reasonable accommodations of his disability.

Plaintiff was born in 1965 and is currently forty-six years old.

In January of 1999, Plaintiff and his father, Jim Moloney, went to the Home Depot Store in Southfield, Michigan to inquire about employment for Plaintiff.  (Jim Moloney Dep. at 27-28).  While at the store, Plaintiff's father checked with several different people and ultimately was referred to someone named Ken.  Ken told Plaintiff and his father how Plaintiff could apply for a job at Home Depot.

After that initial conversation, Plaintiff's father wrote a letter addressed to Ken Thompson at Home Depot, dated January 20, 1999.  (Exhibit 4 to Pl.'s Br.).  That letter, dated January 20, 1999, stated, in pertinent part:

2

Dear Ken,

Reference is made to our conversation at your store on Tuesday relative to possible employment opportunities for my son Patrick, who is currently employed by Builders Square-HQ, at Home Depot.

I want to first take this opportunity to thank you for personally taking the time and showing interest in my questions.  You were most helpful and your effort was most appreciated.

Since *Pat is "Educationally Mentally Impaired"* and not "computer oriented" I followed your recommendation I came in with Pat this morning and assisted him in completing the application and the test.  There were some things that we were unable to input on the computer and it is for this reason I wanted to make the following clarifications in order for you to complete you[r] "screening" process. . . . .

     2.  Since Patrick is in the process of making a move to a new "Independent" home we have shown this location and phone number as his residence until he is completely situated.  Also, it will be easier to contact him through us since no one is at the other location during the day.  Hopefully this will help the screening process. . . . .

     4.  A comment regarding the test which was described as taking approx. 40 minutes – it took Pat 1 hour 20 minutes to complete.  I provided assisted [sic] by working the computer and making sure that he understood the questions being asked.  Because of the described "impairment" I doubt that he could have completed the test without this assistance – the answers were his.

As I indicated to you, my only desire for Pat is to see if there is a "Win-Win fit" and opportunity at Home Depot – hopefully there is – if not, he tried.  If you determine that I can be of assistance during the interview itself I will be happy to do so.  Based on previous interviews this has benefitted both Pat and the potential employer . . .

(*Id.*) (emphasis added).  Plaintiff's father testified that he drove his car to the Southfield store to deliver the letter.  He does not recall if he gave the letter to Ken at that time, simply left it at the office, or gave it to someone else.  (Jim Moloney Dep. at 31-33).

     It is undisputed that Plaintiff applied for a job at the Southfield, Michigan Home Depot Store.  Home Depot representatives Ed Whitacre and Kim Octaviano interviewed Plaintiff.  Ed

3

Whitacre was the Store Manager of the Southfield Store at that time. Octaviano was introduced

to Plaintiff's father as being an "HR person." Although Plaintiff was thirty-four years old at that

time, Plaintiff's father sat in on the job interview with Plaintiff. (Jim Moloney Dep. at 34-36).

After the interview, Plaintiff's father wrote a letter addressed to Octaviano, dated March

21, 1999. (Ex. 5 to Pl.'s Br.). Ed Whitacre was also copied on the letter. That letter stated, in

pertinent part:

> Dear Kim,
>
> First let me thank both you and Ed Whitacre for the reception that you gave Pat
> and I during the interview process. I am sure that it was beneficial for Pat and I
> can tell you that it was most assuring for me as a concerned parent of a young
> man, who in spite of *a few disabilities*, can, I believe, become a very productive
> and fine employee for Home Depot.
> . . . .
> This move to Home Depot is very, very important for Pat and is also very
> important to us, as his parents. Our objective is to be *as self-sufficient as possible*
> both at work and at his home. *As indicated during the interview, Pat has recently
> moved into an "Angels Place" home located just north of thirteen mile with three
> other young men. Although it is "part-time" staffed*, the men pretty much live
> independently. Mrs. Moloney and I live in the subdivision immediately behind
> Home Depot. Since *we are still involved in much of his "decision-making"* we
> still maintain this location for all his records and mailing address at this location.

(*Id.*). Plaintiff's father testified that he put that letter in an envelope and personally delivered it

to "the HR room or wherever Kim's office was." (Jim Moloney Dep. at 36-38). He does recall

whether he handed the letter to her, left it at the office, or gave it to someone else to give to her.

(*Id.*).

Plaintiff was hired as a Sales Associate in the Garden Department at Home Depot's

Southfield Store on March 22, 1999.

Plaintiff worked at Home Depot's Southfield Store until he was terminated on August 15,

2009, for "failure to provide customer service." (Ex. 38 to Def.'s Br.). Thus, he worked there

for more than 10 years.

During his tenure at Home Depot, Plaintiff had numerous supervisors and managers. Plaintiff received numerous performance evaluations, which contained both positive and negative remarks. Many evaluations noted that Plaintiff excelled in many areas but needed to improve in areas regarding dealing with customers. For example, a September 20, 1999 Performance Appraisal stated: "Patrick is always willing to help customers. However, he needs to create a more pleasant first impression. Needs to smile more often." (Ex. 12 to Def.'s Br.). Several reviews state that he needs to work on greeting customers and "saying hi to everyone."

In 2009, Home Depot's Code of Conduct was revised to emphasize the importance of customer service. (Ex. 9 to Def.'s Br.). That Code of Conduct listed minor and major work rule violations. Minor work violations include failing to greet every customer. (*Id*.).

As part of those changes in 2009, Home Depot also created "Power Hours." Those were designated hours when employees were supposed to focus on dealing with customers on the floor and they were not supposed to stock merchandise or perform other regular duties. (Pl.'s Dep. at 57-58). Plaintiff's supervisor Keith Stevens testified that Plaintiff did not adjust to these changes regarding customer service. (Stevens Dep. at 196-97). Thereafter, Plaintiff received several discipline notices. (*See* Exs. 34, 36, 37). They all related to customer service.

Keith Stevens testified that he made the decision to terminate Plaintiff. (Stevens Dep. at 250). He testified that Plaintiff was terminated for poor customer service. (*Id*. at 252).

All of the various supervisors that have supervised Plaintiff testified that they did not know, or have any reason to believe, that Plaintiff had any kind of mental impairment. Their testimony also includes, however: that they knew that Plaintiff lived in a "group home"

(McFarland Dep. at 24); that they recognized that Plaintiff "might be a little bit slow" (McFarland Dep. at 16); that they were aware that Plaintiff's parents were working with him "on his smiling" and his ability to answer the telephone (Mary Moloney Affidavit); they observed that Plaintiff speaks very slowly (Stevens Dep. at 257); that Plaintiff was a "different personality" and he walked in a "supersonic speed" (Stevens Dep. at 176); that Plaintiff paused for a long time between questions and answers (Stevens Dep. at 257); that Plaintiff sometimes had problems focusing (Stevens Dep. at 257-58); that Plaintiff's handwriting was poor (Abrahamson Dep. at 83; Ex. 12 to Pl.'s Br.); and that sometimes Plaintiff "stuttered and stuff." (Stevens Dep. at 260).

After the close of discovery, Defendant filed the instant Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.[1]

## ANALYSIS

### I.   Plaintiff's Disability Discrimination Claims

Where, as here, a plaintiff does not rely on direct evidence of discrimination, "the burden-shifting framework of *McDonnell Douglas* governs a claim of disability discrimination." *Shoemaker v. E.I. DuPont de Nemours and Co.*, 405 Fed.App'x 16, 18 (6th Cir. 2010) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184-85 (6th Cir. 1996)).  As explained by the Sixth Circuit, "[t]hat familiar framework works as follows: The plaintiff must first establish a

---

[1]Following a Motion to Strike, the parties stipulated that, for purposes of Defendant's Motion for Summary Judgment, "Plaintiff shall not rely upon the opinions of either Dr. Derrick Fries, Ph.D (Docket #30-2) or Dr. Sandra McClennen, Ph.D (Docket # 30-3) that Defendant knew or should have known that Plaintiff is disabled."  (Docket Entry No. 40).

prima facie case of discrimination." *Shoemaker, supra*, at 18 (citing *Monette, supra*). If he satisfies that obligation, the burden shifts to the employer to offer a "legitimate nondiscriminatory" reason for its challenged action. If the employer does so, the burden shifts back to the plaintiff to establish that the employer's proffered reason is merely a pretext for unlawful discrimination. *Id.*

### A.   Can Plaintiff Establish A Prima Facie Case Of Disability Discrimination?

To establish a prima facie case of disability discrimination under the ADA,[2] a plaintiff must show that: 1) he is disabled; 2) he is otherwise qualified for the position, with or without reasonable accommodation; 3) he suffered an adverse employment action; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 58-59 (6th Cir. 2011).[3]

In its Motion for Summary Judgment, Defendant challenges the first, second, and fourth elements.

### 1.   Disabled

---

[2]"Michigan's Persons with Disabilities Civil Rights Act substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002). The Court will only address Plaintiff's PWDCRA claims where the standard differs from the ADA.

[3]In its Brief, Defendant asserts that under existing Sixth Circuit precedent Plaintiff must establish that he was discharged "solely" because of his disability. While that was an accurate statement when Defendant's brief was filed, the Sixth Circuit very recently issued an *en banc* decision holding otherwise. *See Lewis v. Humboldt Acquisition Corp.*, __ F.3d __, (6th Cir. May 25, 2012).

Under the ADA, "[t]he term 'disability' means, with respect to an individual": 1) a physical or mental impairment that substantially limits one or more major life activities of such individual; 2) a record of such an impairment; or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A). "Major life activities" include, but are not limited to, caring for oneself, learning, concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A).

"To broaden the definition of 'disability,' Congress passed the ADA Amendments Act of 2008." *Donald v. Sybra, Inc*., 667 F.3d 757, 764 (6th Cir. 2012). The ADA, as amended, has "[r]ules of construction regarding the definition of disability" which include that: 1) the "definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter"; 2) the "term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008"; and 3) an "impairment that substantially limits one major life activity need not limit other major life activities in order be considered a disability." 42 U.S.C. § 12102(4).

Here, Plaintiff asserts that he is actually disabled in that he has an intellectual disability that substantially limits one or more of his major life activities. In so arguing, Plaintiff relies on EEOC Enforcement Guidance. (*See* Ex. 28 to Pl.'s Br., EEOC Questions & Answers about Persons with Intellectual Disabilities in the Workplace and the ADA).

"An individual is considered to have an intellectual disability when: (1) the person's intellectual functioning level (IQ) is below 70-75; (2) the person has significant limitations in adaptive skills as expressed in conceptual, social, and practical adaptive skills; and (3) the

8

disability originated before the age of 18.  'Adaptive skill areas' refers to basic skills needed for everyday life.  They include communication, self-care, home living, social skills, leisure, health and safety, self-direction, functional academics (reading, writing, basic math), and work."  (Ex. 28 to Pl.'s Br., EEOC Questions & Answers about Persons with Intellectual Disabilities in the Workplace and the ADA, at 1).  That same publication includes an example of when someone with an intellectual impairment would be covered by the ADA:

> Example: A person with an intellectual impairment is capable of living on his own, but requires frequent assistance from family, friends, and neighbors with cleaning his apartment, grocery shopping, getting to doctors' appointments, and cooking.  He is unable to read at a level higher than the third grade, and so needs someone to read his mail and help him pay bills.  This person is substantially limited in caring for himself and therefore has a disability under the ADA.

(*Id.* at 2).

Such "Enforcement Guidance, while non-binding, 'constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Lee v. City of Columbus*, 636 F.3d 245, 256 (6th Cir. 2011).

Plaintiff's full-scale IQ is 66, which "place[s] him in the extremely low range of intellectual functioning" and the "classification of mild mental retardation."  (Laviolette Report, Ex. 8 to Pl.'s Br., at 2 & 4; *see also* McClellan Report, Ex. 2 to Pl.'s Br., at 6).  Thus, Plaintiff's IQ is below 70.  In terms of basic skills, Plaintiff functions at the level of an individual who is 8 years old; his reading skills are that of an individual who is 9 years old, and his writing skills are that of an individual who is 7 years old.  (Laviolette Report at 3).

In addition, Plaintiff has submitted evidence that his disability originated long before the age of 18.  (*See* Dep. Tr. of Jim Moloney, Ex. 7 to Pl.'s Br., at 15; Pl.'s Dep. at 41-42).

Plaintiff has also submitted evidence that he has significant limitations in self-care and

home living.  Plaintiff "needs some support for everyday life, so he lives in a group home, which is a home shared by a number of people with disabilities and which has paid staff at a level that is deemed necessary to meet the needs of those who live in that particular home."  (McClellan Report at 2).  In addition to the staff at the group home, Plaintiff's parents provide him with daily support in terms of caring for himself.  Plaintiff's mother helps him write checks, pay bills, and take care of other day-to-day responsibilities.  (Affidavit of Mary Kathleen Moloney, Ex. 13 to Pl.'s Br.).

Accordingly, the Court finds that Plaintiff has submitted sufficient evidence to create an issue of fact as to whether he is disabled under the ADA.

### 2.    Otherwise Qualified for Position With or Without Reasonable Accommodation

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  "Only a minimal showing of 'qualification' is required to establish a prima facie claim; 'a plaintiff need only demonstrate that [he or] she possesses the basic skills necessary for performance of the job.'"  *Chavez v. Waterford Sch. Dist.*, 720 F.Supp.2d 845, 854-55 (E.D. Mich. 2010) (quoting *Sista v. CDC Ixis N.A., Inc*., 445 F.3d 161, 171 (2d Cir. 2006)).

Here, Plaintiff was employed at Home Depot as a Sales Associate for more than 10 years. While his numerous reviews contain statements regarding Plaintiff needing to improve in customer service areas, Home Depot continued to employ him and gave him some generally positive reviews.  (*See e.g.*, Ex. 16 to Pl.'s Br.) (Giving Plaintiff an overall performance ranking of "valued associate" and stating "Pat is a good associate to have in the garden department.").

10

The Court finds that Plaintiff has submitted sufficient evidence to create an issue of fact as to whether he was qualified for the position of Sales Associate.

### 3.       Employer Knew Or Had Reason To Know Of Plaintiff's Disability

The element that is truly at the heart of the dispute as to whether Plaintiff can establish a prima facie case of disability discrimination is whether Plaintiff's employer knew or had reason to know of Plaintiff's disability.  Again, in order to establish his prima facie case under the ADA, one must establish that "the employer knew or had reason to know of the plaintiff's disability."  *Whitfield*, 639 F.3d at 259.

Neither party has cited any Sixth Circuit cases articulating how or why an employer might "have reason to know" of a plaintiff's disability.  A case relied on by Defendant, however, provides some insight as to this issue.  In *Hedberg*, the Seventh Circuit ruled that the plaintiff could not establish a prima facie case of disability discrimination because the employer "indisputably" had no knowledge of the alleged disability, which was a medical disorder called amyloidosis that had been detected in the plaintiff's bloodwork shortly before he was terminated. *Hedberg v. Indiana Bell Tele. Co., Inc*., 47 F.3d 928 (6th Cir. 1995).  Because of the interest in amicus curiae in the issue and the lack of any circuit courts addressing the issue, the court went on to discuss this issue:

> It may be rare that there is no genuine dispute whether an employer knew about an employee's disability when it decided to fire an employee.  This question does not arise in most cases of alleged employment discrimination.  In race or sex discrimination, the protected characteristic of the employee is immediately obvious to the employer, but that is not always the case with disability discrimination.  It is true that an employer will automatically know of many disabilities.  For example, an employer would know that a person in a wheelchair, or with some other obvious physical limitation, had a disability.  Furthermore, an employer may actually know of disabilities that are not immediately obvious: the employee may ask for an accommodation under the ADA, or he may inform the

> employer gratuitously, for example.  In those cases, which are likely the vast
> majority, the issue we face would not arise: there could not be a genuine issue that
> the employer had no knowledge of a disability.
>
> However, unlike with race or sex discrimination, there are situations in
> alleged disability discrimination cases where an employer clearly did not know
> and could not have known of an employee's disability.  We think that an
> employer cannot be liable under the ADA for firing an employee when it
> indisputably had no knowledge of the disability.

*Id.* at 932.  The court stated that the "ADA does not require clairvoyance" but further explained:

> Of course, if an employee tells his employer that he has a disability, the employer
> then knows of the disability, and the ADA's further requirements bind the
> employer.  Furthermore, it may be that some symptoms are so obviously
> manifestations of an underlying disability that it would be reasonable to infer that
> an employer actually knew of the disability.

*Id.* at 934.

While Plaintiff's various supervisors, testified that they did not know that Plaintiff had a

mental impairment, Plaintiff contends that when the evidence he has submitted is viewed in the

light most favorable to him, a reasonable jury could conclude that Defendant either knew or

should have known that he was disabled.  The Court agrees.

Again, in order to establish a prima facie case under the ADA, a plaintiff must establish

that "the *employer* knew or had reason to know of the plaintiff's disability."  *Whitfield*, 639 F.3d

at 259 (emphasis added).  Construing the evidence in the light most favorable to Plaintiff, the

Store Manager of the Southfield Store and a Human Resources Representative at the Southfield

Store were advised by Plaintiff's father, at the time Plaintiff was interviewed and initially hired,

that Plaintiff had a mental impairment.   That evidence alone may be sufficient to create an issue

of fact as to whether Defendant knew or had reason to know of Plaintiff's disability.

Defendant appears to take the position that it is incumbent on this Plaintiff, who has a

mental impairment, to advise each and every supervisor, over the course of his more than ten

years of employment at the Southfield Store, that he has a mental impairment even if Defendant's human resources representative at the Southfield Store and the Store Manager were aware of that disability from the beginning of his employment. The Court rejects that position.

Moreover, as detailed in Plaintiff's brief, although they testified they did not know he had a disability, the testimony from Plaintiff's various supervisors includes: knowledge that Plaintiff lived in a group home, recognizing that Plaintiff "might be a little bit slow", observing that Plaintiff spoke very slowly, that he paused for a long time between questions and answers, he had problems focusing, sometimes he "stuttered and stuff," etc. Plaintiff has also presented evidence to establish that one of Plaintiff's supervisors was aware that Plaintiff had difficulty smiling when working with customers and difficulty in operating a telephone, and that Plaintiff's parents were working with Plaintiff on his "smiling" and ability to use a telephone. (*See* Affidavit of Mary Moloney, Ex. 13 to Pl.'s Br.). A reasonable juror could conclude that such symptoms are sufficiently obvious enough manifestations of a mental disability that it may be reasonable to infer that Plaintiff's supervisors knew or should have known of his disability.

Accordingly, the Court rules that an issue of fact exists as to whether Defendant knew or should have known that Plaintiff has a mental disability.

**B.      Has Defendant Offered A Legitimate Nondiscriminatory Reason For Terminating Plaintiff?**

Once a plaintiff meets his burden of establishing a prima facie case, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was terminated for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 254.

Defendant contends that Plaintiff was terminated for poor customer service. Thus,

13

Defendant has offered a legitimate nondiscriminatory reason for Plaintiff's termination and it has produced evidence to establish that Plaintiff had problems engaging with customers.

### C.  Can Plaintiff Establish Pretext?

The burden then shifts back to Plaintiff to establish pretext.

Plaintiff may show pretext either directly, by persuading the trier of fact that a discriminatory reason more likely than not motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

A plaintiff typically attempts to refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason: 1) had no basis in fact; 2) did not actually motivate the defendant's challenged conduct; or 3) was insufficient to warrant the challenged conduct. *Wexler,* 317 F.3d at 576 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Serv*s., 557 U.S. 167, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009). "However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008).

Where a case is at the summary judgment stage, a plaintiff seeking to prove discrimination via indirect evidence must submit sufficient evidence from which a reasonable jury could conclude that the defendant's nondiscriminatory reason for its actions is a pretext for unlawful discrimination. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).

Here, Plaintiff cites *Reeves* for the proposition that "[a] fact finder is entitled to consider

14

a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" (Pl.'s Br. at 26)

(citing *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147 (2000)).  Plaintiff then asserts:

> In this case, the honesty of the employer's beliefs and explanation are in dispute.  A reasonable jury, after hearing all of the evidence, could reject as dishonest the testimony of Home Depot's managers denying knowledge of Moloney's intellectual disability.  If a jury were to conclude that Home Depot's managers were dishonest on this point, it could reasonably infer that Moloney's managers and supervisors are concealing their true understanding of Moloney's disability and their motivation for failing to accommodate his disability.

(Pl.'s Br. at 26).

The Court concludes that Plaintiff has submitted sufficient evidence as to pretext to survive summary judgment.  At trial, the jury will hear Plaintiff testify and will observe his speaking, his facial expressions, mannerisms, etc.  Based upon that alone, the jury may conclude that Plaintiff's mental impairment is obvious.  They will also hear testimony from Plaintiff's various managers over his more than ten years at Home Depot, which includes testimony that they knew that Plaintiff lived in a "group home," recognized that Plaintiff "might be a little bit slow", observed that Plaintiff spoke very slowly, that he paused for a long time between questions and answers, he had problems focusing, sometimes he "stuttered and stuff," etc.  In addition, if the jury believes Plaintiff's father's testimony, then Home Depot's human resources and management at the Southfield Store had written notice of Plaintiff's mental impairment at the time that Plaintiff was hired.  Despite all of this, each and every supervisor testified that they did not know, or have any reason to believe, that Plaintiff had a mental impairment.

The Court agrees that if the jury rejects the testimony of Plaintiff's supervisors as dishonest, the jury could infer that Plaintiff's supervisors are concealing their knowledge of Plaintiff's disability and that Defendant's stated reason for his discharge is a pretext for unlawful

15

discrimination.

## II.     Plaintiff's Failure To Accommodate Claims

A failure to accommodate is another "form of discrimination on the basis of disability." *Johnson v. Cleveland City Sch*., 344 Fed. App'x 104, 110 (6th Cir. 2009).

Here, Plaintiff asserts failure to accommodate claims under both the ADA and Michigan's PWDCRA.  Defendant's motion challenges both of these claims.

### A.     Under The PWDCRA

In order to bring a cause of action under the PWDCRA "for failure to accommodate in employment, the employee must advise the employer in writing of the need for accommodation." *Petzold v. Borman's Inc*., 241 Mich.App. 707, 716 (2000); MICH. COMP. LAWS § 37.1210(18) (providing, in pertinent part, that "[a] person with a disability may allege a violation against a person regarding a failure to accommodate under this article only if the person with a disability *notifies the person in writing of the need for an accommodation* within 182 days after the person with a disability knew or reasonably should have known that an accommodation was needed.") (emphasis added).

Defendant contends that Plaintiff's failure to accommodate claim under the PWDCRA fails because Plaintiff never requested an accommodation in writing.

Plaintiff responds to this argument in a footnote on page 25 of his Response Brief.  In doing so, he makes two arguments. First, he asserts that summary judgment as to this claim should be denied because "Moloney's father notified Home Depot store management, in writing, of his son's disability and need for accommodation."  (Pl.'s Br. at 25)  Plaintiff does not specify the writing to which he refers, nor does he state the accommodation that was allegedly requested.

16

To the extent that the letters Plaintiff directs the Court to are Exhibits 4 and 5 to Plaintiff's Brief, the Court fails to see how those letters can be seen as requesting a specific accommodation that Defendant failed to provide.  Exhibit 4 is a letter that Plaintiff's father allegedly wrote to Defendant before Plaintiff was hired and, at most, it asks Defendant to allow Plaintiff's father to help Plaintiff with the application and interview process – which Defendant allowed.  Exhibit 5 is a letter that Plaintiff's father sent after the interview, stating that all Plaintiff needs is "the opportunity, some training, and some good supervision" and that once Plaintiff "becomes familiar with the your procedures and policies, and what is expected of him, I think you'll find that he will need little following."  (Ex. 5 to Pl.'s Br. at 1).  While that letter did appear to ask Defendant to give Plaintiff a consistent work schedule, Plaintiff's work schedule was not the problem that led to his termination.

Second, Plaintiff notes that the Michigan statute requires an employer to post a notice to inform employees of the requirements of subsection (18), by virtue of MICH. COMP. LAWS § 37.1210(19).  Citing *Holmes*, Plaintiff asserts that if an employer fails to post such a notice, a plaintiff is relieved from requesting an accommodation in writing, and then asserts that "there is no evidence that Home Depot posted such notices."  (Pl.'s Br. at 25 n.15).  In *Holmes*, an unpublished district court decision, the defendant employer sought summary judgment on a PWDCRA failure to accommodate claim the ground that the plaintiff did not request an accommodation in writing.  *Holmes v. Electronic Data Sys. Corp*., 1995 US Dist. LEXIS 11005 (E.D. Mich. 1995).  In denying summary judgment, the district court noted that under the Act, if an employer fails to post a requisite notice, an employee's failure to provide written notice is excused.  The court then appeared to construe the employer as having the burden of proof that it

posted the requisite notice.

A more recent decision from the Michigan Court of Appeals, however, is fatal to

Plaintiff's position and expresses disapproval of *Holmes*, although it does not mention the case

by name. *In London v. American Hearing Ctrs, Inc.*, 2004 WL 2124626 (Mich.App. 2004), the

court noted:

> The effect of an employee's failure to provide written notice of the need for
> accommodation and an employer's failure to post the notices required by §
> 210(19) is addressed in § 505(5) of the act, which provides:
>
> > A person with a disability may not bring a civil action . . . for a
> > failure to accommodate under article 2 unless he or she has
> > notified the person of the need for accommodation as required
> > under section 210(18). *This subsection does not apply if the
> > person failed to comply with the requirements of section 210(19).*
> > [MCL 37.1606(5) (emphasis added).
>
> Therefore, if an employer fails to post the notices required by § 210(19), an
> employee's failure to provide written notice of the need for accommodation in
> accordance with § 210(18) is not a bar to filing a lawsuit.

*Id.* In that case, it was undisputed that the plaintiff did not request an accommodation in writing

from her employer. The plaintiff asserted, however, like Plaintiff does here, that the defendant

employer failed to post the notices required by the Act. But, like our Plaintiff here, the plaintiff

did not present any evidence to support that assertion. The court ruled that, contrary to the

approach taken by the unpublished federal case relied on by the plaintiff, the defendant was

entitled to summary judgment:

> Plaintiff argues that she was not obligated to provide written notice to defendant
> because defendant failed to post the notices required by § 210(19). However,
> plaintiff merely *alleges* that defendant failed to comply with § 210(19). We have
> found no affidavit or other documentary evidence in the record, and plaintiff
> points to none, indicating that defendant failed to make the required notification.
> As noted in *Wilson v. Taylor*, 457 Mich. 232, 243; 577 NW2d 100 (1998), a party
> may not simply announce a position and leave it up to this Court to find support

> for her claim. . .  We conclude, contrary to the implication in the unpublished
> federal case cited by plaintiff, that it was incumbent upon plaintiff to show that
> defendant failed to comply with § 210(19) if she wished to proceed with her
> disability claim despite her failing to notify defendant in writing of her need for
> accommodation.  Accordingly, we conclude that the trial court did not err in
> dismissing plaintiff's disability claim on the basis that plaintiff failed to provide
> written notice of her need for accommodation.

*Id*. at *3 (emphasis in original).  Thus, under *London*, Plaintiff's unsupported assertion that

Defendant did not post the requisite notice is insufficient to avoid summary judgment.  *See also*

*Bageris v. Brandon Twp*., 264 Mich.App. 156, 163-64 (2004) (noting that the "PWDCRA places

the burden of proof for a claim of failure to accommodate on the person with a disability.").

Accordingly, Plaintiff's failure to accommodate claim under the PWDCRA shall be

dismissed.

## B.     Under The ADA

It is well-established that the elements necessary for a prima facie case are flexible

because the facts necessarily will vary in employment discrimination cases and the specification

of the prima facie proof required "'is not necessarily applicable in every respect to differing

factual situations.'"  *Thompson v. Henderson*, 226 Fed. App'x 466, 472 (6th Cir. 2007) (quoting

*McDonnell Douglas*, 411 U.S. at 802 n.23, 93 S.Ct. 1817)).

In order to establish a prima face case for failure to accommodate under the ADA,  a

plaintiff must typically show that: 1) she is disabled within the meaning of the Act; 2) she is

otherwise qualified for the position, with or without reasonable accommodation; 3) her employer

knew or had reason to know about her disability; 4) she requested an accommodation; and 5) the

employer failed to provide the necessary accommodation."  *Johnson v. Cleveland City School*

*Dist*., 443 Fed.App'x. 974, 982-83 (6th Cir. 2011).  "A reasonable accommodation includes 'job

19

restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices. . .[or] other similar accommodations for individuals with disabilities.'" *Johnson v. Cleveland City School Dist Johnson,* 344 Fed. App'x 104, 111 (6th Cir. 2009).

Defendant contends that this claim must be dismissed because Plaintiff never requested an accommodation from Home Depot. (Def.'s Br. at 16).[4] In support of its position, Defendant cites several Sixth Circuit decisions, including *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042 (6th Cir. 1998) and *Lockard v. General Motors Corp.*, 52 Fed.Appx. 782 (6th Cir. 2002).

In response, Plaintiff asserts that his "disability was obvious to his managers and supervisors and they were therefore legally obligated to attempt accommodations, even if [he] did not request one." (Pl.'s Br. at 20). Plaintiff's brief directs the case to several decisions from outside the Sixth Circuit: *Brady v. Wal-Mart Stores, Inc*., 531 F.3d 127 (2d Cir. 2007); *Taylor v. Phoenixville Sch. Dist*., 174 F.3d 142, 165 (3d Cir. 1999); *and Bultermeyer v. Fort Wayne Comm. Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996). Plaintiff also asserts that various non-binding EEOC Enforcement Guidelines support his position.

For the reasons that follow, the Court agrees with Plaintiff.

In *Gantt*, the plaintiff alleged that the defendant violated the ADA by failing to accommodate her physical disability, which was an inability to work after surgery to repair a torn rotator cuff. The district court rejected the claim because the plaintiff never requested an accommodation from her employer and plaintiff appealed. In affirming that ruling, the Sixth

---

[4]Defendant's brief also challenged the third element, whether Defendant knew or had reason to know of his disability. The Court has already concluded, however, that Plaintiff has created a fact as to that element.

Circuit stated that:

> The applicable EEOC regulations provide that it is "unlawful for a covered entity not to make reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a)(emphasis added). The Commissions's interpretative guidelines indicate that **generally** "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. pt. 1630 App. § 1630.9.

*Gannt,* 143 F.3d at 1046 (italics as emphasis in original, bolding added for emphasis here).

Because it is generally the responsibility of the disabled employee to request an accommodation, the court affirmed the trial court's grant of summary judgment, noting that the plaintiff never requested any accommodation either before or after her termination. There were no facts to suggest that the plaintiff's disability impaired her ability to request an accommodation.

In *Lockard,* the Sixth Circuit ruled that "the district court correctly concluded that summary judgment was appropriate with respect to [the plaintiff's] failure-to-accommodate claim because *Lockard* failed to present evidence that she requested an accommodation." *Lockard*, 52 Fed.Appx. at 787. In that case, the disability was also a physical disability (a work related injury affecting her hand, wrist, and arm). The plaintiff had requested an initial accommodation, assignment to a new position in the manufacturing plant that she worked in, which her employer provided. Although the plaintiff later believed that new position did not accommodate all of her physical restrictions, she did not request any further accommodations. Thus, the court concluded that her employer was "not required to provide further accommodations absent [the plaintiff] requesting further accommodation." *Id.* at 787.

*Gannt* and *Lockard* both involved situations where the disability at issue was a physical

disability, as opposed to a mental impairment.  Thus, they provide little insight as to the issue at hand.  Neither the Court nor the parties have found any Sixth Circuit decisions that address this issue.

The Court believes that the Second Circuit's decision in *Brady*, relied on by Plaintiff, provides the appropriate guidance.

In *Brady*, the plaintiff was a nineteen-year-old man with cerebal palsy and evidence was presented to show that his "disability manifested itself in noticeably slower walking, walking with a shuffle and limp, recognizably slower and quieter speech, not looking directly at people when talking to them, weaker vision, and a poor sense of direction."  *Brady*, 531 F.3d at 130.  On appeal, the employer argued "that, because [the plaintiff] never requested an accommodation and testified that he did not think he needed one, the district court should have granted judgment as a matter of law on the failure to accommodate claim."  *Id*. at 134-35.

The Second Circuit began its analysis by noting that, generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.  *Id*.  It then acknowledged that it had not previously had occasion in the past to determine when that general rule might be inapplicable.  The Second Circuit cited with approval, the following from a district court decision that had addressed this issue:

> Application of this general rule [that a request for accommodation is a prerequisite to liability for failure to accommodate] is not warranted, however, where the disability is obvious or otherwise known to the employer without notice from the employee.  The notice requirement is rooted in common sense.  Obviously, an employer who acts or fails to act without knowledge of a disability cannot be said to have discriminated based on that disability.  Morever, the notice requirement prevents an employee from keeping her disability a secret and suing later for failure to accommodate.  These concerns are not relevant when an employer has independent knowledge of an employee's disability. The rule requiring a request for accommodation [does not apply] in such circumstances.

*Brady,* 531 F.3d at 135 (quoting *Felix v. New York City Transit Authority*, 154 F.Supp.2d 640 (S.D. N.Y. 2011)).  The Second Circuit noted that "[t]his view is consistent with the statutory and regulatory language, which speaks of accommodating 'known' disabilities, not just disabilities for which accommodation has been requested." *Brady*, 531 F.3d at 135.  Thus, the court held "that an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious – which is to say, if the employer knew or reasonably should have known that the employee was disabled." *Id*.  In such situations, the employer has an obligation to initiate an interactive process with the employee so that, working together, they can determine whether the employee's disability can be reasonably accommodated. *Id.*

While the Sixth Circuit has not expressly adopted or endorsed the approach taken in *Brady,* there are at least two decisions that suggest approval of such an approach. *See, e.g., Clark v. Whirlpool Corp.*, 109 Fed.App'x. 750, 755 (6th Cir. 2004); *Brown v. Chase Brass & Copper Co.*, 14 Fed.App'x, 482 (6th Cir. 2001).

In *Brown*, the Sixth Circuit affirmed the trial court's dismissal of the plaintiff's failure to accommodate claim on the ground that the plaintiff failed to request an accommodation. *Brown*, 14 Fed. App'x. at 487 ("Since [plaintiff] failed to propose an accommodation of his disability," he cannot establish a prima facie case.).  In a footnote, the court noted that the Seventh Circuit, in *Bultemeyer*, "stated that '[t]he employer had to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help.' *Bultemeyer v. Fort Wayne Comm. Schs*., 100 F.3d 1281, 1285 (7th Cir. 1996)." *Id.* at 487 n.2.  The Sixth Circuit concluded, however, that "Brown's disability [,which was carpel tunnel syndrome,] quite clearly does not impede his ability to request an

accommodation, so he must request it in the first instance.  Chase's duty to engage in an interactive search for a reasonable accommodation, therefore, never arose." *Id.* (emphasis added).

In *Clark,* the disability was also a physical disability, a work-related back injury.  The Sixth Circuit affirmed the trial court's dismissal of her failure to accommodate claim because the plaintiff had not requested an accommodation.  The court stated that an "employer is not required to speculate as to the extent of the employee's need or desire for accommodation." *Clark,* 109 Fed.App'x at 755.  It also stated that "[o]f course, when a request would be futile, we have excused the failure to make it when the need for an accommodation was obvious to the employer."  But there were no facts suggesting that a request would have been futile or that the need for an accommodation was obvious.

Based on the above cases and EEOC guidance[5] on this issue, and in light of the well-established flexible nature of the prima facie case, the Court holds that the application of the general rule that a plaintiff must request an accommodation in order to establish a prima facie case is not warranted where: 1) the disability at issue is a mental disability that is obvious or otherwise known to the employer without notice from the employee; 2) the employer has reason to believe that the employee is experiencing work problems because of that disability; and 3) and the nature of the disability impairs the employee's ability to request an accommodation.  Where such evidence exists, the fourth element of a typical prima facie failure-to-accommodate claim

_____

[5](*See* Ex. 28 to Pl.'s Br. at 9-10).

(the plaintiff requesting an accommodation) is not necessary.[6]

Here, Plaintiff has submitted evidence that, when viewed in the light most favorable to Plaintiff, establishes that Home Depot had actual notice that Plaintiff was mentally impaired from the beginning of his employment, by virtue of Plaintiff's father's written and oral communications with Home Depot's human resources and management at the Southfield Store. In addition, there is evidence in the record that Plaintiff exhibits numerous symptoms that could cause a reasonable person to recognize that he is mentally impaired.  The testimony from Plaintiff's own supervisors includes: knowledge that Plaintiff lived in a "group home," recognizing that Plaintiff "might be a little bit slow", observing that Plaintiff spoke very slowly, that he paused for a long time between questions and answers, had problems focusing, and that sometimes he "stuttered and stuff," etc.  Issues of fact also exist as to whether Defendant had reason to believe that Plaintiff's work problems were the result of his mental disability and as to whether Plaintiff's alleged disability impairs his ability to request an accommodation.

Accordingly, the Court concludes that Plaintiff has established a prima facie case of failure to accommodate.  That conclusion, however, does not end the analysis of this claim.

Plaintiff's counsel asserts that if Plaintiff can establish a prima facie case under *Brady*, the analysis ends there and, at trial, the jury could rule in his favor.

Defendant, on the other hand, asserts that the burden-shifting approach in ADA failure-to- accommodate cases should still apply.

The Court agrees with Defendant that a burden-shifting approach continues once Plaintiff

---

[6]Neither are the third or fifth elements.  The third element is replaced by this modification and, in light of the modification, the fifth element is not necessary.

establishes a prima facie case.

Even after *Brady*, the Second Circuit has recognized that an "employer's failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible." *McBride v. Bic Consumer Prods. Mfg. Co., Inc*., 583 F.3d 92, 100 (2d Cir. 2009).  In other words, the employer's failure to engage in such an interactive process "does not relieve a plaintiff of her burden of demonstrating, following discovery, that some accommodation of her disability was possible." *Id.* at 101.  This is because if no accommodation was possible, the inquiry ends and there can be no liability under the ADA.

Thus, once a plaintiff establishes a prima face case of failure to accommodate, but never actually proposed a reasonable accommodation, to proceed with a claim the plaintiff must present evidence to show that some type of accommodation was possible.  If the employee creates an issue of fact as to that issue, the burden then shifts to the employer to show that the proffered accommodation was not possible or would impose an undue hardship on the employer.

Essentially, this Court is crafting a modified approach to Plaintiff's failure-to-accommodate claim based on the unique factual circumstances of this case.  As such, the Court is essentially changing "the rules of the game" after the close of discovery and after the parties have already briefed the pending Motion for Summary Judgment.  Through no fault of counsel, the parties' briefs do not address the issues of whether: 1) Plaintiff has presented sufficient evidence to create an issue of fact as to whether an accommodation was possible; or 2) whether Defendant can establish that the proffered accommodation was not possible or would impose an undue hardship on the employer.   Accordingly, the Court shall hold a Status Conference with Counsel on **July 13, 2012 at 2:30 p.m.**, to determine whether:  1) the parties can address the

above issues by virtue of supplemental briefs; or 2) if some very limited additional discovery is needed by either party before doing so.

CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART, DENIED IN PART, and that the Court SHALL DEFER RULING on Plaintiff's failure-to-accommodate claim under the ADA until after the parties have submitted supplemental briefs.

IT IS FURTHER ORDERED that the Court shall hold a Status Conference with Counsel on **July 13, 2012 at 2:30 p.m.**, to determine whether the parties can address the remaining issues involving Plaintiff's failure to accommodate claim under the ADA by virtue of supplemental briefs or whether some very limited additional discovery is needed by either party before doing so.

IT IS SO ORDERED.

S/Sean F. Cox                    
Sean F. Cox
United States District Judge

Dated:  May 31, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 31, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez              
Case Manager

27